# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN FRATTAROLA, ANNA MAY LAMPART, CASSANDRA RUFF and PAMELA KIMBLE-ARMSTRONG, *on behalf of themselves and all other employees similarly situated,*<br><br>*Plaintiffs,*<br><br>v.<br><br>MERCY HEALTH SYSTEM OF SOUTHEASTERN PENNSYLVANIA, MERCY CATHOLIC MEDICAL CENTER OF SOUTHEASTERN PENNSYLVANIA, MERCY FITZGERALD HOSPITAL, MERCY PHILADELPHIA HOSPITAL, MERCY SUBURBAN HOSPITAL, NAZARETH HOSPITAL, ST. AGNES CONTINUING CARE CENTER, H. RAY WELCH, JR. and ELYSE A. KAPLAN<br><br>*Defendants.* | Civil Action No. 2:09-cv-5533 |

## DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY

As supplemental authority in support of Defendants' Motion to Dismiss Plaintiffs' Complaint, Defendants respectfully submit the attached Memorandum and Order issued on July 2, 2010, by the U.S. District Court for the District of Massachusetts in <u>Cavallaro v. UMass Memorial Health Care, Inc., et al.</u>, No. 09-40152-FDS (D. Mass. Jul. 2, 2010), granting the defendants' motion to dismiss plaintiffs' claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 <u>et seq.</u>

Respectfully submitted,

/s/ Andrea M. Kirshenbaum
Patrick Matusky
Caroline M. Austin
Andrea M. Kirshenbaum
Duane Morris LLP
30 S. 17th Street
Philadelphia, PA 19103
(215) 979-1000

Date:   July 14, 2010

Case 2:09-cv-05533-CMR   Document 89   Filed 07/15/10   Page 3 of 14
Case 2:09-cv-05533-CMR   Document 87   Filed 07/14/10   Page 14 of 25
Case 4:09-cv-40152-FDS   Document 40   Filed 07/02/10   Page 1 of 12

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PATRICIA CAVALLARO and MONIQUE HERMAN, on behalf of themselves and all other employees similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>UMASS MEMORIAL HEALTH CARE INC.; UMASS MEMORIAL HOSPITALS, INC.; UMASS MEMORIAL MEDICAL CENTER, INC.; HEALTHALLIANCE HOSPITALS, INC.; MARLBOROUGH HOSPITAL; THE CLINTON HOSPITAL ASS'N; WING MEMORIAL HOSPITAL CORP.; JOHN O'BRIEN; PATRICIA WEBB; and UMASS MEMORIAL HEALTHCARE 401K,<br><br>　　　　Defendants. | Civil Action No.<br>09-40152-FDS |

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS AND DEFENDANTS' MOTION TO STRIKE

SAYLOR, J.

　　This is an employment dispute about compensation for extra time worked. Plaintiffs Patricia Cavallaro and Monique Herman, on behalf of themselves and all other employees similarly situated, brought suit against various related hospitals and health care providers. They contend that defendants employ a variety of policies to deny plaintiffs compensation for all time worked and seek relief under a variety of statutes, including the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (Count 1); the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* (Counts 2 and 3); and the Racketeer Influenced and Corrupt

Case 2:09-cv-05533-CMR   Document 89   Filed 07/15/10   Page 4 of 14
Case 2:09-cv-05533-CMR   Document 87   Filed 07/14/10   Page 15 of 25
Case 4:09-cv-40152-FDS   Document 40   Filed 07/02/10   Page 2 of 12

Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* (Count 4). Currently pending before the Court is defendants' motion to dismiss the RICO count and defendants' motion to strike plaintiffs' pre-lawsuit consents. For the reasons that follow, the motion to dismiss will be granted and the motion to strike will be denied without prejudice to its renewal.

I.  **Background**

The two named plaintiffs are employed by one or more defendants (the complaint does not indicate) and are paid by the hour. They purport to represent a class of some 13,000 similarly situated individuals.[1] Defendants UMass Memorial Health Care, Inc.; UMass Memorial Hospitals, Inc.; UMass Memorial Medical Center, Inc.; HealthAlliance Hospitals, Inc.; Marlborough Hospital; Clinton Hospital Association; and Wing Memorial Hospital Association are related hospitals and healthcare providers; defendants John O'Brien and Patricia Webb are executive officers of UMass Memorial Health Care; and defendant UMass Memorial Healthcare 401K is an ERISA-governed retirement plan. The complaint alleges that defendants have violated various statutory and common-law duties by failing to compensate plaintiffs for all time worked. According to plaintiffs, defendants have engaged in at least three unlawful practices: (1) automatically deducting time from each employee's paycheck for meal breaks, even if the employee does not actually receive such a break; (2) failing to compensate employees for work completed before and after their shifts; and (3) failing to compensate employees for time spent

---

[1] According to the complaint, the class of hourly employees includes, without limitation, "secretaries, housekeepers, custodians, clerks, porters, food service hosts, registered nurses, licensed practical nurses, nurses aides, administrative assistants, anesthetists, clinicians, medical coders, medical underwriters nurse case managers, nurse interns, nurse practitioners, practice supervisors, professional staff nurses, quality coordinators, resource pool nurses, respiratory therapists, senior research associates, operating room coordinators, surgical specialists, admissions officers, student nurse techs, trainers, transcriptionists, occupational therapists, occupational therapy assistants, physical therapists, physical therapy assistants, radiation therapists, staff therapists, angiotechnologists, x-ray technicians, CAT scan technicians, mammographers, MRI technologists, sleep technologists, surgical technologists, radiographers, phlebotomists, and other health care workers." (Compl. ¶ 95).

2

Case 2:09-cv-05533-CMR   Document 89   Filed 07/15/10   Page 5 of 14
Case 2:09-cv-05533-CMR   Document 87   Filed 07/14/10   Page 16 of 25
Case 4:09-cv-40152-FDS   Document 40   Filed 07/02/10   Page 3 of 12

attending training sessions.

Plaintiffs filed the present complaint on September 3, 2009, alleging four causes of actions arising under the FLSA (Count 1), ERISA (Counts 2 and 3), and RICO (Count 4). The complaint includes class-action allegations. On September 14, 2010, and again on October 14, 2010, plaintiffs filed some 108 forms on behalf of employees indicating consent to participate in the case. *See* 29 U.S.C. § 216(b) (requiring written consent from employee in order to be a party-plaintiff in a FLSA class action). Currently pending before the Court are two motions filed by defendants: a motion to dismiss the RICO count and a motion to strike the consents.

## II. Motion to Dismiss

### A. Legal Standard

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

3

Case 2:09-cv-05533-CMR   Document 89   Filed 07/15/10   Page 6 of 14
Case 2:09-cv-05533-CMR   Document 87   Filed 07/14/10   Page 17 of 25
Case 4:09-cv-40152-FDS   Document 40   Filed 07/02/10   Page 4 of 12

Fed. R. Civ. P. 9(b) requires that plaintiffs plead fraud counts with particularity. The purpose of that requirement is (1) to give the defendants notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to using discovery as a fishing expedition; and (3) to safeguard defendants from frivolous charges that might damage their reputations. *See In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 170 (D. Mass. 2003); *see also McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228-29 (1st Cir. 1980). Rule 9(b) applies to RICO claims alleging mail fraud. *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997).

Count 4 appears to allege two substantive RICO violations: one under 18 U.S.C. § 1962(c) and one under § 1962(a). The Court will address each claim in turn.

### 1. 18 U.S.C. § 1962(c)

Plaintiffs first allege a RICO claim under 18 U.S.C. § 1962(c). That section provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Section 1962(c) makes illegal any "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 41 (1st Cir. 1991) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). "Racketeering activity" is defined to include a variety of federal crimes, including, among other things, threats, bribery, extortion, embezzlement, theft, wire fraud, and mail fraud. 18 U.S.C. § 1961.

In this case, plaintiffs allege a § 1962(c) claim involving mail fraud. *See* 18 U.S.C. § 1341. Specifically, plaintiffs contend that defendants knowingly orchestrated a scheme to deprive them of compensation for all time worked, and that they furthered this scheme by

4

Case 2:09-cv-05533-CMR   Document 89   Filed 07/15/10   Page 7 of 14
Case 2:09-cv-05533-CMR   Document 87   Filed 07/14/10   Page 18 of 25
Case 4:09-cv-40152-FDS   Document 40   Filed 07/02/10   Page 5 of 12

mailing to the plaintiffs paychecks that fraudulently misrepresented the number of hours plaintiffs actually worked.[2] According to plaintiffs, the paychecks represented that they had worked fewer hours than they actually had.

To prove mail fraud, plaintiffs must provide evidence of (1) a scheme to defraud based on false pretenses, representations, or promises; (2) the defendant's knowing and willing participation in the scheme with the specific intent to defraud; and (3) the use of interstate mail communications in furtherance of the scheme. *United States v. Cheal*, 389 F.3d 35, 41 (1st Cir. 2004).

To satisfy the "in furtherance" element of a mail fraud claim, "the mailings need not be an 'essential element' of the scheme." *United States v. Hebshie*, 549 F.3d 30, 36 (1st Cir. 2008) (quoting *Pereira v. United States*, 347 U.S. 1, 8 (1954)). Rather, the mailings "must be sufficiently closely related to the scheme such that they are incident to an essential part of the scheme, or a step in the plot." *Id.* (quotations and alteration omitted). Although a "but-for" link between a mailing and the fraudulent scheme is not necessary, *id.*, "the success of the scheme must be dependent in some way on the mailings, either in obtaining the desired object or in avoiding or delaying detection of the scheme." *United States v. Greenleaf*, 692 F.2d 182, 186 (1st Cir. 1982); *see United States v. Pacheco-Ortiz*, 889 F.2d 301, 305 (1st Cir. 1989) ("[T]he scheme's completion or the prevention of its detection must have depended in some way on the mailings.").

Plaintiffs have failed to show how defendants furthered their allegedly fraudulent scheme by mailing the paychecks in question. According to plaintiffs, the mailed paychecks

---

[2] Presumably, the information concerning hours worked was on the paycheck stubs, rather than the paychecks themselves. For the sake of convenience, this opinion will simply refer to "paychecks."

5

Case 2:09-cv-05533-CMR   Document 89   Filed 07/15/10   Page 8 of 14
Case 2:09-cv-05533-CMR   Document 87   Filed 07/14/10   Page 19 of 25
Case 4:09-cv-40152-FDS   Document 40   Filed 07/02/10   Page 6 of 12

fraudulently omitted time that they had actually worked, and thus concealed from them the fact that they were not being fully compensated. But if the paychecks were as plaintiffs allege, they did not further defendants' fraudulent scheme; to the contrary, they made the scheme's discovery more likely. *See United States v. Maze*, 414 U.S. 395, 403 (1974) (concluding that mailings did not further a fraudulent scheme when they "increased the probability that [the defendant] would be detected and apprehended"). Take, for example, an hourly employee who is at work from 8:30 a.m. to 5:00 p.m., five days a week. She is entitled to a half-hour lunch break each day, for which her employer tells her that she will not be paid. In a normal week, the employee's paycheck would reveal that she worked and was paid for 40 hours. Assume, however, that on Monday and Tuesday of a particular week, the employee is required by her employer to work through her lunch break. At the end of the week when the paycheck arrives, it omits the time she worked during her lunches on Monday and Tuesday, documenting only 40 hours of work instead of 41. Any reasonable employee, recognizing that she worked one hour more than she was being paid for, would be alerted to the problem. Indeed, if it were the employer's object to fraudulently deprive its employee of payment for all time worked, mailing her the paycheck as described would serve only to put the employee on notice of the alleged fraud.

That is precisely what plaintiffs allege happened here. Plaintiffs contend that defendants are not paying them for all the time they work. Although they argue that the paychecks "concealed from [them] that they were not being paid for all the time they worked," (Doc. 37 at 5), they concede that the paychecks reported the actual number of hours for which they were paid. (*Id.*). As defendants aptly note, "If the paychecks informed Plaintiffs that they were paid for fewer hours than they allegedly worked, that information would serve to expose, not further,

6

Case 2:09-cv-05533-CMR Document 89 Filed 07/15/10 Page 9 of 14
Case 2:09-cv-05533-CMR Document 87 Filed 07/14/10 Page 20 of 25
Case 4:09-cv-40152-FDS Document 40 Filed 07/02/10 Page 7 of 12

the alleged fraud." (Doc. 39 at 3). Consequently, the use of the mail was not in furtherance of the allegedly fraudulent scheme, and plaintiffs have failed to state a § 1962(c) RICO cause of action for mail fraud. *See Cheal*, 389 F.3d at 41.

The Supreme Court's decision in *United States v. Maze*, 414 U.S. 395 (1974), is instructive. In that case, Maze stole his roommate's credit card and used it to obtain food and lodging at various out-of-state businesses. *Id.* at 396. Each establishment where Maze used the credit card mailed an invoice to the issuing bank requesting payment. *Id.* The victim, meanwhile, notified the same bank that his credit card had been stolen, and Maze's crime was discovered. *Id.* Maze was charged and convicted of mail fraud, and he appealed to the Supreme Court, which reversed his conviction. *Id.* at 397-98. According to the Court, the mailing of the invoices from the various businesses to the issuing bank was not "for the purpose" of executing the fraudulent scheme. *Id.* at 403. On the contrary, "successful completion of the mailings . . . increased the probability that [Maze] would be detected and apprehended." *Id.* Although Congress could have written the mail fraud statute to so as to require "only that the mails be in fact used as a result of the fraudulent scheme," it had not done so. *Id.* at 404. It instead required that the mailings be "for the purpose of executing such a scheme," something the invoices in *Maze* were not designed to do. *Id.*

The reasoning of *Maze* applies here as well. Under plaintiffs' version of events, the paychecks did not accurately reflect the number of hours worked, although they did accurately reflect the number of hours for which plaintiffs were paid. As described above, such a state of affairs would alert the plaintiffs to the fraudulent scheme, not conceal it. *See also Spiegel v. Cont'l Ill. Nat'l Bank*, 790 F.2d 638, 649 (7th Cir. 1986) (dismissing a mail fraud claim where

7

Case 2:09-cv-05533-CMR   Document 89   Filed 07/15/10   Page 10 of 14
Case 2:09-cv-05533-CMR   Document 87   Filed 07/14/10   Page 21 of 25
Case 4:09-cv-40152-FDS   Document 40   Filed 07/02/10   Page 8 of 12

defendant's correspondence placed the plaintiff on notice of the purported fraud).

Finally, this is not a case in which the mailings furthered a fraudulent scheme by "lull[ing] the victims into a false sense of security, postpon[ing] their ultimate complaint to the authorities," thereby making the detection of the scheme "less likely than if no mailings had taken place." *United States v. Pimental*, 380 F.3d 575, 587-88 (1st Cir. 2004) (quoting *United States v. Lane*, 474 U.S. 438, 451-52 (1986)). In *United States v. McCann*, for example, the mailings at issue kept the "house of cards" scam from collapsing, thereby "decreasing the risk of detection by causing the . . . payments to be routed in such a way as to keep the scheme running until such time as [the defendant] could devise a way to . . . avoid detection altogether." 366 F.3d 46, 52-53 (1st Cir. 2004), *rev'd on other grounds*, 543 U.S. 1104 (2005). Here, by contrast, the mailings alerted plaintiffs to the existence of the alleged scam. Far from keeping the house of cards standing, the paychecks at issue here (if plaintiffs are correct) made its collapse more likely.

It would be a different case if defendants' allegedly fraudulent conduct were not apparent on the face of the mailings. If, for example, an employee's weekly paycheck represented that the employer was withholding $100 and contributing it to the employee's retirement plan, when in reality the employer was pocketing the money for itself, the mailings would likely serve to further a fraudulent scheme. The paperwork would appear to be in order, and the employee would not know any better. But here, the plaintiffs do know better: they know how many hours they have worked and how much money they have been paid. Merely by looking at the face of their paychecks, the plaintiffs can ascertain whether they are being underpaid. And because those paychecks put them on notice of the alleged fraudulent scheme, plaintiffs have failed to

8

Case 2:09-cv-05533-CMR   Document 89   Filed 07/15/10   Page 11 of 14
Case 2:09-cv-05533-CMR   Document 87   Filed 07/14/10   Page 22 of 25
Case 4:09-cv-40152-FDS   Document 40   Filed 07/02/10   Page 9 of 12

state a cause of action under § 1961(c).

### 2.   18 U.S.C. § 1962(a)

Plaintiffs also appear to allege a RICO claim under 18 U.S.C. § 1962(a). (*See* Compl. ¶ 132).[3] In relevant part, that section forbids "any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income . . . in acquisition of any interest in, or the establishment or operation of, any enterprise" engaged in or affecting interstate commerce. 18 U.S.C. § 1962(a). In the First Circuit, the "investment use rule" requires plaintiffs asserting a § 1962(a) cause of action to allege a specific injury flowing from the investment and use of racketeering proceeds. *Compagnie de Reassurance D'Ile de France v. New Eng. Reinsurance Corp.*, 57 F.3d 56, 91 (1st Cir. 1995); *Trustees of Boston Univ. v. ASM Commc'ns, Inc.*, 33 F. Supp. 2d 66, 73 n.7 (D. Mass 1998). That is, plaintiffs "must allege an injury resulting from the investment of racketeering income distinct from an injury caused by the predicate acts themselves." *New Eng. Reinsurance*, 57 F.3d at 91 (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1188 (3d Cir. 1993)).

No such allegation appears in the complaint, and plaintiffs do not seriously contend otherwise. Rather, plaintiffs speculate and hypothesize as to what they *might* be able to prove at trial to satisfy the investment use rule, all the while failing to identify a single allegation in the complaint that supports such conjecture. Indeed, plaintiffs' defense of their complaint consists of the following:

Under the investment injury rule, *the issue will be* whether Plaintiffs injuries were

---

[3] Section 1962(a) is mentioned only once in the complaint, and it is not clear whether plaintiffs in fact have alleged a § 1962(a) violation. Plaintiffs cite to § 1962(a) in their factual allegations, but do not refer to it in the operative paragraphs that outline their RICO cause of action. (*Compare* Compl. ¶ 132, *with id.* ¶ 154-56). The Court will assume for present purposes that plaintiffs intend to allege a § 1962(a) RICO claim.

9

Case 2:09-cv-05533-CMR   Document 89   Filed 07/15/10   Page 12 of 14
Case 2:09-cv-05533-CMR   Document 87   Filed 07/14/10   Page 23 of 25
Case 4:09-cv-40152-FDS   Document 40   Filed 07/02/10   Page 10 of 12

> caused by Defendants' investment of racketeering money in their enterprise. At trial, Plaintiffs *may be able to prove* this point by any number of theories. *They may be able to prove*, for example, that by investing such money in the enterprise, Defendants continued to operate the hospitals where Plaintiffs worked, brought in even more patients, thus causing more work and requiring Plaintiffs to miss even more of the meal breaks that Defendants automatically deducted from their pay.

(Doc. 37 at 10-11 (emphasis added)). Such speculation, when unsupported by any allegations in the complaint, is insufficient to survive a motion to dismiss for failure to state a claim.

### 3. Conclusion

For these reasons, plaintiffs have failed to state a RICO claim under either § 1962(a) or § 1962(c). Count 4 of the complaint will be dismissed.

### B. Motion to Strike

The second motion filed by defendants asks the Court to strike each of the consent forms filed on behalf of employees who have decided to participate in this lawsuit. Plaintiffs have, to date, filed 108 consent forms. According to defendants, these must be struck because plaintiffs' counsel obtained them while acting as third-party agents, not attorneys, and because the consents were not appropriately informed.

Under the FLSA, "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). By its terms, the statute requires two things for a consent to be facially valid: (1) the consent must be writing; and (2) the consent must be filed in the court in which the lawsuit is brought. On their face, each of the 108 consents filed by plaintiffs satisfy these two requirements, and defendants do not argue otherwise.

Defendants, however, make a variety of allegations that coalesce around two themes. First, defendants object to the manner by which plaintiffs' counsel solicited the consent forms,

10

Case 2:09-cv-05533-CMR   Document 89   Filed 07/15/10   Page 13 of 14
Case 2:09-cv-05533-CMR   Document 87   Filed 07/14/10   Page 24 of 25
Case 4:09-cv-40152-FDS   Document 40   Filed 07/02/10   Page 11 of 12

focusing primarily on the fact that many were obtained before this lawsuit was filed.[4] Second, defendants contend that the employees did not provide informed consent because they did not have a full understanding of the scope of the lawsuit and the obligations of being a party-plaintiff. Defendants ask this Court for a sweeping remedy: they seek to have the Court (1) strike all 108 consents, and permit the case to proceed only on behalf of the named plaintiffs; (2) order plaintiffs' counsel to remove from all websites any content that solicits consent forms for this lawsuit; (3) refuse to allow plaintiffs' counsel to communicate with potential plaintiffs except with the prior approval of the Court; and (4) order plaintiffs' counsel to pay attorneys' fees and costs incurred by defendants in bringing the motion to strike.

As noted, the consents facially comply with the requirements of the statute. Implicit in the statute—that is, implicit in the use of the word "consent"—is the requirement that any such consent be knowing and voluntary. *See Piper v. RGIS Inventory Specialists, Inc.*, No. C-07-00032 (JCS), 2007 WL 1690887, at *8 (N.D. Cal. June 11, 2007) (finding that in order for a consent to be informed, an individual must have a "'basic understanding' of what they are consenting to") (quoting *Montalvo v. Tower Life. Bldg.*, 426 F.2d 1135, 1148 (5th Cir. 1970)). On the present record, which is not fully developed, the Court is not prepared to make findings as to those issues. A facially-valid consent might prove to be invalid, for example, because it was procured by false statements, misrepresentation, or fraud, or under coercion or duress, or

---

[4] According to defendants, plaintiffs' counsel have operated a national litigation campaign targeting individuals who are employed by healthcare systems. According to defendants, plaintiffs' counsel maintain a website soliciting individuals to join various lawsuits that have been filed across the country, as well as lawsuits that have yet to, and may never be, filed. The consent forms available on the website expressly disclaim the creation of an attorney-client relationship unless and until the consent form has been filed in the appropriate court. Prospective plaintiffs are not informed that the lawsuits will include claims under ERISA and RICO, nor are they informed of who precisely will be sued (if anyone). Finally, because many of the consents (including some obtained in this case) are obtained prior to the filing of a lawsuit, defendants argue that the scheme is designed to benefit plaintiffs' counsel rather than to protect the interests of clients.

11

Case 2:09-cv-05533-CMR Document 89 Filed 07/15/10 Page 14 of 14
Case 2:09-cv-05533-CMR Document 87 Filed 07/14/10 Page 25 of 25
Case 4:09-cv-40152-FDS Document 40 Filed 07/02/10 Page 12 of 12

because it was the product of unethical or illegal solicitation.[5] Any such decision is best made on a complete record after an appropriate opportunity for discovery and hearing. Accordingly, the motion to strike will be denied without prejudice to its renewal on a more complete record.

Because the Court has concluded that the consent forms need not be struck, it need not address the appropriateness of defendants' additional proposed sanctions.

### III. Conclusion

For the foregoing reasons, defendants' motion to dismiss is GRANTED and defendants' motion to strike is DENIED without prejudice to its renewal.

**So Ordered.**

/s/ F. Dennis Saylor<br>
F. Dennis Saylor IV<br>
United States District Judge

Dated: July 2, 2010

---

[5] Plaintiffs have supplied a report from a Massachusetts attorney specializing in professional ethics who opines that the conduct of plaintiffs' counsel is "in compliance with the provisions of the Massachusetts Rules [of Professional Conduct] governing the communication of information about legal services, including the Rule relating to the communication of lawyer services generally (Rule 7.1) and the Rule relating to advertising (Rule 7.2) and solicitation (Rule 7.3)." (Doc. 36-1 at 3).